IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CAROL BLAU,                                          CV 04-576-TC

             Plaintiff,                              FINDINGS AND
                                                     RECOMMENDATION
      v.

JO ANNE B. BARNHART, Commissioner
of Social Security,


             Defendant.

      Alan Stuart Graf
      Kimberly K. Tucker
      1020 SW Taylor, Suite 230
      Portland, OR  97205-2555

             Attorneys for Plaintiff

      Karin J. Immergut
      United States Attorney
      Craig J. Casey
      Assistance United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

Richard A. Morris
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

Attorneys for Defendant

COFFIN, Magistrate Judge:

## BACKGROUND

Plaintiff, Carol Blau (Blau), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act (the Act).  42 U.S.C. §§ 401-33.  The court has jurisdiction under 42 U.S.C. § 405(g).

Blau alleges disability beginning March 15, 1996, due to chronic fatigue immune deficiency syndrome and depression.  To be eligible for benefits under Title II of the Act, a claimant must show that she became disabled while she was insured under the program.  See 42 U.S.C. § 416(I)(3).  Blau was insured through December 31, 2001.  At the time of the ALJ's final decision Blau was 53 years old.  She has a college degree, a real estate license, and was formerly licensed as a certified public accountant (CPA).  She has worked as a controller, a CPA, and a real estate agent.

On appeal to this court, Blau contends the ALJ erred by (1) wrongly rejecting doctors' opinions; (2) failing to provide

adequate reasons to reject Blau's testimony; (3) failing to provide adequate reasons to reject her husband's testimony; and, (4) failing to pose a complete hypothetical question at step five of the sequential evaluation.

For the following reasons, the Commissioner's decision should be affirmed and this case should be dismissed.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Tacket v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. <u>Id</u>.; <u>see also</u> 20 C.F.R. § 404.1560(c)(2).

Here, at step one, the ALJ found that Blau had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 17, 28; <u>see</u> 20 C.F.R. § 405.1520(b)

At step two, the ALJ found that Blau had the following severe impairments: depressed mood disorder, secondary to her

general medical condition; and, osteoarthropathy.  Tr. 17, 28;
see 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Blau's impairments
did not meet or equal the requirements of a listed impairment.
Tr. 22, 28; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Blau with the residual functional capacity
(RFC) to perform light work with the following limitations: a
lift/carry and push/pull limit of 20 pounds occasionally, and 10
pounds frequently; a stand/walk limitation of 2 hours
(cumulatively, not continuously) in an 8-hour workday; no
climbing of ladders, ropes or scaffolds; only occasional climbing
of ramps and stairs; only occasional bending, balancing,
stooping, kneeling, crouching, or crawling; no more than
occasional interaction with the general public; and, no more than
low-average, semi-skilled work, not to exceed an SVP of 4 or 5.
Tr. 25-26; see 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1567.

At step four the ALJ found that Blau was no longer able to
perform her past relevant work.  Tr. 26, 28; see 20 C.F.R. §§
404.1520(a)(4)(iv), 404.1520(f).

However, at step five the ALJ, relying on a vocational
expert (VE), found that Blau could perform other work existing in
significant numbers in the national economy, as an accounting
clerk, accounts payable clerk, payroll clerk, and statistics

clerk.  Tr. 27, 28; <u>see</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

**DISCUSSION**

I.   **The ALJ properly assessed Blau's residual functional capacity.**

A claimant's residual functional capacity (RFC) is the most an individual can still do despite her limitations.  SSR 96-8p. It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  <u>Id</u>.

Blau contends the ALJ failed to provide clear and convincing reasons to reject her testimony regarding her symptoms.  She also argues the ALJ improperly evaluated much of the medical evidence, thereby failing to find "severe" many of her alleged impairments, and wrongly discrediting the opinions of four physicians.

A.   **Blau's Testimony**

Blau testified that she cannot work because she feels fatigued all the time, her body aches, she is unable to think clearly and she has difficulty sleeping.  Tr. 556-57.  She used to be the "number two person" for a company employing between 200 and 250 employees.  Tr. 581.  Blau handled the company's finances.  <u>Id</u>

Regarding her daily activities, Blau testified that on an average day she wakes up, makes coffee and a light breakfast,

reads the paper, pets her cat, reads the mail, watches TV from a reclining chair, washes a load of laundry, and prepares dinner for herself and her husband. Tr. 552-53. She said her weight has been stable at 250 pounds since 1995 or so. Tr. 554. In terms of household work, Blau testified that she does the grocery shopping, but the clerks load the bags into her car, and her husband unloads them at home. Tr. 563. Also, Blau pays the bills and prepares the taxes. Tr. 580.

Blau testified that her only medications are Prilosec (for heartburn) and Ambien (for sleep). Tr. 556. She said she can walk about 20 to 30 minutes at a time, and stand no more than five minutes at a time. Tr. 556-57. Blau estimated she could not lift more than the weight of a coffee cup for the majority of an 8-hour workday, and the weight of a gallon of milk up to 1/3 of an 8-hour day. Tr. 561-62. She wears slip-on shoes because she can't bend over. Tr. 562.

If the claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. <u>See</u> <u>Smolen</u>, 80 .3d at 1284; <u>see also</u> SSR 96-7p.

The ALJ may not reject a claimant's testimony about the severity of his symptoms solely because it is not corroborated fully by objective medical findings. <u>Cotton</u>, 799 F.2d at 1408. The ALJ may reject the claimant's testimony regarding the severity of his symptoms only by providing clear and convincing reasons for doing so. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Smolen</u>, 80 F.3d at 1283.

In his written decision, the ALJ indicated that he considered "every word from the claimant at both hearings, as well as the testimony of her husband," and found their testimony "generally credible." Tr. 24. However, he stated, "they have reported highly generalized symptoms of fatigue and diffuse

pain," which he found contradicted by record evidence.  Id.  For instance, the ALJ noted that Blau's testimony regarding "confusion and memory" was contradicted by the fact she earned her real estate license after her alleged onset of disability, and was involved in at least two real estate transactions.  Tr. 24.

Blau argues it took her several quarters of schooling to complete the course work necessary to pass the real estate exam, and the ALJ failed to consider how difficult the exam may have been for her.  However, the record does not include Blau's grades in these classes or otherwise support this contention.  Even if it did, the fact Blau was able to engage in a long-term academic pursuit after her alleged onset of disability betrays her contention that she is so easily confused she "can't handle" paperwork.  Tr. 542.  The ALJ also determined that Blau's ability to pay the bills and prepare the family's taxes showed she was not as confused and forgetful as she alleged.  Id.

Further, the ALJ found that Blau's subjective reports were inconsistent with her activities of daily living.  Tr. 23; see Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(when a claimant's level of activity is inconsistent with her claimed limitations, her activities will have a bearing on her credibility).

According to Blau, she only drives three or four times a week, and only to the grocery store, so it was improper for the

ALJ to discredit her based on this activity. However, it wasn't just the driving that the ALJ found to be inconsistent with Blau's allegedly severe fatigue, but the fact she attended college classes, studied and sat for an exam, brokered two home sales as a real estate agent, grocery shops and cooks for herself and her husband, does the household laundry, pays bills, prepares the family's taxes, uses the computer, etc. Tr. 23-24, 561-62.

Finally, the ALJ gave detailed reasons why the degree of impairment alleged by Blau was not born out by the medical evidence. Tr. 17, 23, 28. He stated:

> She has reported to doctors that she has pain in her neck, mid-back, ribs, lower back, hips, left knee, right knee, and carpel tunnel in her hands. She also reports that she is depressed, and though she was on an anti-depressant, she admitted at the hearing that she has not seen a psychologist, sought mental counseling or been on any anti-depressant medications, since she stopped seeing Dr. Andrich, in September of 2000. She initially stated that she last saw a psychiatric counselor in June of 2001, but could not recall the name of the person. When I confirmed the record only show [sic] one treating psychologist, Dr. Andrich, through September of 2000, she was non-responsive.

Tr. 23. Notably, Blau's failure to offer an explanation for this inconsistency evidences a general lack of candidness, which is a crucial factor in evaluating a claimant's credibility.

Also, the ALJ noted Blau's minimal use of pain medication, and her failure to seek treatment for her allegedly severe fibromyalgia- further evidence weighing against her contention that she experiences disabling pain. Tr. 19, 513. Record evidence shows Blau stopped taking anti-depressants of her own

accord, contrary to doctor's order, resulting in an increase in depressive symptoms.  Tr. 316, 371, 388-96, 515.

The ALJ also properly considered Blau's obesity vis a vis her failure to comply with doctor's orders to be more active. Both Dr. Andrich and Dr.  Schoepflin prescribed exercise for her depression, but Blau's husband testified that she only attempts exercise "once every couple of months."  Tr. 292, 513, 589.

In sum, I find the ALJ properly noted multiple inconsistencies between Blau's self-reports and evidence of her actual activities and medical treatment.  Tr. 18, 19, 23, 24. The reasons he gave for finding Blau less than fully credible are sufficiently clear and convincing, and based on substantial evidence in the record.

### B.    **The Medical Evidence**

The relative weight given to the opinion of a physician depends on the physician's opportunity to observe and to get to know the patient as an individual.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion receives the least weight. Id.; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician.  Lester, 81 F.3d at 830.

Further, a doctor's statement about a claimant's ability to work is not a proper medical source opinion, but an administrative finding reserved to the Commissioner. SSR 96-5p. Disability has both a medical and vocational component. See 20 C.F.R. § 404.1560. Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight. See 20 C.F.R. § 404.1527(e)(1). The ALJ must consider medical opinions about a claimant's condition and functional limitations, along with all other evidence in the record, to determine whether a claimant is disabled under the Social Security Act. SSR 96-5p.

**I.   Cynthia Bartley, M.D.**

Blau argues the ALJ was wrong to discredit Dr. Bartley's opinion, expressed in October, 2000, and again in October, 2003, that Blau is "disabled." Tr. 129, 371. As noted above, a doctor's statement about a claimant's ability to work is not accorded much weight. See 20 C.F.R. § 404.1527(e)(1). This is because disability has both a medical and vocational component, and one doctor's opinion is only part of the medical component. See 20 C.F.R. § 404.1560. Thus, the ALJ properly afforded Dr. Bartley's opinion little weight because she did not express her findings in terms of specific functional limitations caused by Blau's alleged impairments.

The ALJ also identified other problems with Dr. Bartley's opinion. He found that her October, 2000, opinion was formulated after just one visit with Blau, and primarily relied on Blau's self-reports about headaches. Tr. 42, 370. Blau contends the ALJ cannot reject her self-reports about headaches without pointing to contradictory evidence. However, alleged impairments must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques, they cannot just be the claimant's statements about her symptoms. See 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508; SSR 96-3p.

In the instant case, Dr. Bartley's note indicates that she performed only a minimal clinical exam, and wrote that Blau's "rating" from the questionnaire she filled out "places her at a severe disability from the headaches and pain that they cause." Tr. 371. Blau's other two self-reports of headaches in the record cannot serve to substantiate her earlier, discredited, self-report. Tr. 483, 494.

The ALJ discredited Dr.Bartley's October, 2003, opinion because her own records indicate Blau was not diagnosed with chronic fatigue syndrome until July 22, 2002, 7 months after Blau's date last insured (December, 2001). Tr. 18. Blau contends she was actually diagnosed with fibromyalgia by Dr. Schoepflin, in May, 2001, and Dr. Bartley was simply

incorporating this diagnosis into her October, 2003, finding.
Yet, as discussed in detail below, Dr. Schoeplfin did not
unequivocally diagnosis Blau with fibromyalgia. Tr. 19. Further,
Dr. Schoepflin opined that Blau did not have chronic fatigue
syndrome. Tr. 513.

In conclusion, I find the ALJ's reasons for discrediting Dr.
Bartley's contradicted opinion were specific and legitimate, and
supported by substantial evidence.

Next, I address Blau's contention that the ALJ erred by not
finding that she has severe cervical dysfunction. In support of
her argument, Blau points to Dr. Bartley's October, 2000, note
referencing "cervical strain," and a January 14, 2002, letter
from Dr. Buehler to Dr. Bartley, stating that Blau "began to
develop symptoms of numbness and tingling in her hands with the
symptom of hands being somewhat swollen" 3 or 4 months prior
(September or October, 2001). Tr. 371, 511. He diagnosed
"probable bilateral carpal tunnel syndrome." Tr. 511.

Yet, whether or not a cervical strain was diagnosed before
her insured status expired is not the only relevant inquiry.
Before designating an impairment "severe" within the meaning of
the Act, the ALJ must find that the impairment is one that causes
significant limitation in a claimant's physical or mental ability
to do basic work activities. See 20 C.F.R. §§ 404.1520(c),
404.1521(a); see SSR 85-28 (examples of basic work activities are

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling). An impairment is not severe if it has no more than a minimal effect on an individual's ability to do basic work activities. <u>See</u> SSR 85-28.

The ALJ did not designate Blau's alleged "cervical dysfunction" as a "severe" impairment because there was no evidence to suggest it had any affect on Blau's physical or mental ability to do basic work activities. This was not error.

Accordingly, I find the ALJ's severity determination was based on substantial evidence in the record.

### ii. Gerald Schoepflin, M.D.

Dr. Schoepflin, a rheumatologist, performed a one-time examination on Blau on May 31, 2001. Tr. 513-17. He opined that it was "more likely that [Blau] is suffering from chronic stress and depression than from chronic fatigue syndrome." Tr. 513. He recommended a "gentle conditioning program" along with walking and aquatic exercise classes. This regime, he said, would make it possible for Blau to "work 4 hours per day five days a week at a sedentary, low stress job." Tr. 513.

The ALJ noted that the latter finding was one reserved to the Commissioner, and properly rejected it. <u>See</u> 20 C.F.R. § 404.1560. He also discredited Dr. Schoepflin's questionable diagnosis of fibromyalgia, finding that he did not identify the

signs needed to make this diagnosis. Tr. 19. Blau argues the
ALJ wrongly rejected Dr. Schoepflin's diagnosis of fibromyalgia.

Dr. Schoepflin's notes of the physical exam he performed on
Blau indicate that he found "fibromyalgia tender points" during
the "musculoskelital" portion of the exam. Tr. 517. However,
Dr. Schoepflin does not specifically indicate that he found the
requisite tender points associated with a fibromyalgia diagnosis.
Further, under the "discussion" section of his report, he writes,
"I advised [Blau] that I do not treat fibromyalgia. I provided
the names of Kip Kemple, MD and Robert Bennett, MD as
rheumatologists skilled in this area." Tr. 513. I find these to
be specific and legitimate reasons to reject Dr. Schoepflin's
opinion.

The ALJ also noted that Blau did not follow up with the
specialists Dr. Schoepflin referred her to, according to the
record, nor did she seek any other treatment for this allegedly
"severe" impairment. Id. As the medical evidence does not
conclusively support a diagnosis of fibromyalgia, or that Blau
suffers any work-related symptoms from this alleged diagnosis,
the ALJ did not err by not designating it a "severe" impairment.
See Mathews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(a
diagnosis does not automatically equate to a disability).

**iii. Angela Andrich, M.D.**

On September 14, 1998, Dr. Andrich evaluated Blau for the first time, and assessed her with a Global Assessment of Functioning (GAF) score of 60. Tr. 300. This score indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 32. Blau argues the ALJ divined his own meaning for a GAF of 60 when he characterized it as meaning Blau had "some difficulty in social, occupational or school functioning, but generally such individuals function fairly well in society." Tr. 20. In so doing, Blau argues the ALJ rejected Dr. Andrich's opinion. I disagree, because a GAF score is not a medical opinion- it is a rating of a patient's overall psychological functioning on a scale of 0-100, at the moment it is assessed. DSM-IV at 32. Further, I find the ALJ's paraphrasing of the meaning of a GAF score of 60, even if erroneous, does not constitute reversible error. See <u>Mathews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993).

Dr. Andrich treated Blau from September, 1998, through September, 2000. Tr. 268-300. During that period, she diagnosed Blau with dysthymia, depression, and chronic depression. <u>Id</u>. She prescribed several anti-depressant medications, such as Prozac and Wellbutrin. Tr. 268-300. As alluded to above, Blau admitted to Dr. Schoepflin that she stopped taking her anti-depressant medication of her own accord, and discontinued

treatment with Dr. Andrich, in part, because Dr. Andrich apparently thought Blau should return to work. Tr. 515.

Nevertheless, the ALJ found Blau's mental impairment to be a "severe" impairment. Tr. 17, 28. Blau takes issue with this finding as well. She contends her diagnosed impairments are more severe than the "depressed mood disorder" found by the ALJ. The diagnostic terms given to Blau's mental impairments are "dysthymic disorder" and "recurrent, moderate major depression." Tr. 390. Yet, Blau does not identify what, if any, work-related functional impairments these disorders cause that the ALJ did not include in his RFC assessment.

As discussed in more detail below, the ALJ assessed a limitation of no more than occasional interaction with the general public, and only low-average semi-skilled work, as a result of Blau's mental impairment. Particularly in light of evidence suggesting Blau's mental impairment was well controlled by medication, I find the ALJ's characterization of her mental impairment resulted in harmless, if any, error.

### iv. Bill Hennings, Ph.D.

On August 3, 2001, Dr. Hennings, a state agency psychologist, reviewed Blau's medical record without examining her. Tr. 416-18. He completed a check-the-box style worksheet, on which he assessed how Blau's mental impairments would effect her ability to perform various work-related functions. The ALJ

credited all but one of his findings, and used them in his hypothetical question at step five. Tr. 565-68. The ALJ did not credit Dr. Hennings' indication that Blau would be "markedly" limited in "the ability to interact appropriately with the general public." Tr. 25, 417. The ALJ found that, based on Blau's own testimony, she was not limited in her ability to interact socially. Tr. 25. He noted that she goes to the grocery store frequently and successfully attended college courses in real estate, and then brokered two real estate transactions. Tr. 25. Thus, the ALJ found no evidence to support checking off this box.

Blau now argues the ALJ wrongly discredited this non-examining physician, whose uncorroborated opinion as to Blau's ability to interact socially takes the form of a disfavored, check-the-box worksheet, without supporting clinical findings. See Young v. Heckler, 803 F.2d 963 (9th Cir. 1986); see also Crane v. Shalala, 76 F.3d 251 (9th Cir. 1996). I find no merit to this argument, nor any error in the ALJ's assessment of Dr. Hennings' opinion.

## II. **The ALJ properly rejected lay witness testimony**.

According to Blau, the ALJ improperly rejected her husband's testimony for the same reasons she argues he improperly rejected her own testimony.

The ALJ found that Mr. Blau's testimony was generally credible, but not very helpful as it described highly generalized symptoms of fatigue and pain. Tr. 24. The ALJ also noted that Mr. Blau's testimony was not altogether consistent with Blau's own testimony and with the objective medical evidence. Tr. 24. For instance, he noted that Mr. Blau's testimony that Blau was easily confused and had memory problems was contradicted by the fact Blau completed the prerequisites to sit for the real estate exam, passed the real estate exam, and was involved in at least two real estate transactions- all after her alleged onset date of disability. Tr. 24, 546-49.

Case law clearly establishes that the ALJ must account for lay witness testimony and provide germane reasons for rejecting it. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this case, I find the ALJ cited germane reasons for partially discrediting Mr. Blau's testimony. This finding should be affirmed.

### III. **The ALJ's finding at step five was supported by substantial evidence.**

Blau contends the ALJ erred by relying on the VE's testimony, which was based on an incomplete hypothetical question. Blau argues the ALJ omitted from his hypothetical

question (1) her need to rest frequently due to fatigue, and (2) her concentration and memory impairment.

After finding Blau was unable to return to her past relevant work, the burden of proving she could still do other work shifted to the ALJ at step 5 of the sequential evaluation. Andrews v. Shalala, 53 F.3d at 1043. The ALJ elicited the expert opinion of a vocational expert (VE), by posing a hypothetical question that incorporated Blau's RFC. Tr. 565-68. In response, the VE testified that a worker with Blau's abilities could perform the jobs of accounting clerk, accounts payable clerk, payroll clerk, and statistics clerk. Tr. 568-69. Finding these jobs exist in significant numbers in the national economy, the ALJ determined that Blau was not disabled within the meaning of the Act. Tr. 27.

For the ALJ to properly rely on the VE's testimony at step 5, he must pose a hypothetical question that reflects all the claimant's limitations. See Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2000). Despite Blau's contention, I find the ALJ properly credited the limitations that were supported by substantial evidence in the record, and discredited limitations that were not. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001)(the ALJ is free to accept or reject restrictions that are not supported by substantial evidence).

With respect to Blau's alleged concentration and memory deficits, after Blau testified as to how they would interfere with her past work as a "CPA tax manager controller," the ALJ asked the VE to address this limitation. Tr. 567. In response, the VE identified the jobs listed above, which do not involve complex tasks or interaction with the public. Tr. 568-70. Blau's alleged need to rest frequently was not supported by the record.

I find the ALJ properly credited the limitations supported by substantial evidence in the record, and properly discredited those that were not. Accordingly, the ALJ's step five determination should be affirmed.

## RECOMMENDATION

Based on the foregoing, the Commissioner's decision should be AFFIRMED, and a final judgment should ultimately be entered dismissing this case with prejudice.

DATED this 28 day of June , 2005.

_____
Thomas Coffin
United States Magistrate Judge